# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| THOMAS E. VINSON, *et al.* | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )  CASE No: _____<br>) |
| EXTREME PRODUCTS GROUP, LLC, *et al.* | )<br>)<br>) |
| Defendants. | )<br>) |

## KKR & CO. INC.'S NOTICE OF REMOVAL

Defendant, KKR & Co. Inc. ("KKR")[1], pursuant to 28 U.S.C. §1332, 1441, and 1446 gives notice of its removal of the civil action entitled *Thomas E. Vinson, et al. v. Extreme Products Group, LLC, et al.*, Case No. 17-CV-2019-900056.00 filed in the Circuit Court of Clay County, Alabama, to the United States District Court for the Northern District of Alabama, Eastern Division. A copy of all prior pleadings filed in the Circuit Court of Clay County is attached hereto as Exhibit A. As grounds for this Notice, KKR states as follows:

## INTRODUCTION

1.   Plaintiffs Thomas Vinson and Matthew Vinson filed this lawsuit in the Circuit Court of Clay County, Alabama on December 4, 2019, against Extreme Products

---

[1] The Complaint incorrectly names the KKR Defendant. The Complaint names "Kohlberg Kravis Roberts & Company, Inc. a/k/a KKR & Co. Inc." as a defendant. (Doc. 2, § 5). According to the Delaware Secretary of State, there is no corporate entity known as Kohlberg Kravis Roberts & Company, Inc. (https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx).

{B3420169}

Groups, LLC ("Extreme Products"), Academy Ltd. ("Academy"), KKR, and Fictious Defendants 1-50. Exhibit A, Complaint.

2. Defendant Extreme Products was served on February 7, 2020. Exhibit A, Extreme Products' Service Return.

3. Defendant KKR was served on December 16, 2019. Exhibit A, KKR's Service Return.

4. Defendant Academy was served on December 10, 2019. Exhibit A, Academy's Service Return.

5. The Complaint alleges, on February 1, 2019, Plaintiff Thomas Vinson suffered injuries as a result of the failure of the foot locking mechanism on an inversion table manufactured by Extreme Products and sold by Academy. Complaint ¶¶ 1-16.

6. The Complaint does not allege a specific damages amount but brings claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), design defect, manufacturing defect, failure to warn, negligence and/or wantonness, breach of implied warranty, and breach of express warranty. Complaint, ¶¶ 26-89. Plaintiffs allege Thomas Vinson suffered a spinal cord injury and facture of the cervical spine resulting in partial quadriplegia and other health complications. Plaintiffs seek damages for alleged medical expenses (past and future), permanent injuries, physical pain, diminished quality of life, attorneys' fees, other compensatory damages, and punitive damages. Complaint, ¶ 47.

7. Counts I-IV allege liability under the AEMLD for design defects, manufacturing defects, and failure to warn. Complaint, ¶¶ 26-69. Count V alleges negligence and/or wantonness because "Defendants did not comply with the existing standards of care in their preparation, design, research, development, manufacture, inspection, labeling, marketing promoting, and selling," of the inversion table. *See* Complaint, ¶ 71. Count VI alleges breach of the implied warranty that the inversion table was "reasonably fit for the ordinary purposes for which such products are used." Complaint ¶ 80. Count VII alleges breach of the express warranty that the inversion table was free from defects in materials and workmanship. Complaint ¶ 85.

8. Academy is the only non-diverse Defendant. While the Complaint pleads that Academy is diverse, Academy's ownership structure is such that it cannot definitively determine all of the states where it is domiciled for purposes of citizenship under federal law.

## GROUNDS FOR REMOVAL

9. This case is properly removed to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. This Court has original jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332, and under 28 U.S.C. § 1441(b), because diversity of citizenship exists between Plaintiffs and Extreme Products—the only true parties to this action—and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Plaintiffs are citizens of Alabama and New Jersey. Complaint, ¶¶ 1-2.

11. The Complaint alleges that Extreme Products is a limited liability company organized and existing under the laws of the Delaware with its principal place of business in Arizona. Complaint, ¶ 3.

12. The Complaint alleges that KKR is an investment firm formed under the laws of Delaware with its principal place of business in New York. Complaint, ¶ 5.

13. The Complaint alleges that Academy is formed under the laws of Texas with its principal place of business in Texas. Complaint, ¶ 4. Academy, however, is unable to state with certainty that it is not a citizen of Alabama for diversity purposes because of its ownership structure. Its presence in this action does not compromise the complete diversity requirement because it has been fraudulently joined to defeat federal diversity jurisdiction. *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003).

14. Fictitious Defendants 1-50's citizenship should be disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1).

15. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Where, as here, "on the face of the pleadings, there is a lack of complete diversity . . . an action may nevertheless be removable if the joinder of the non-diverse party . . . were fraudulent." *Id*.

16. Joinder will be deemed fraudulent "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs*,

154 F. 3d at 1287. Stated differently, Plaintiff must "have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Id*. "The potential for legal liability 'must be reasonable, not merely theoretical.'" *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002)).

17. "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

18. Plaintiffs' Complaint alleges seven counts: Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), design defect, manufacturing defect, failure to warn, negligence and/or wantonness, breach of implied warranty, and breach of express warranty. Based on the factual allegations, these claims are "product liability actions" as defined by ALA. CODE § 6-5-521(a):

> A "product liability action" means any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) **negligence**, (2) innocent or negligent misrepresentation, (3) the manufacturer's liability doctrine, (4) **the Alabama extended manufacturer's liability doctrine** as it exists or is hereafter construed or modified, (5) **breach of any implied warranty**, or (6) **breach of any oral express warranty** and no other.

Ala. Code § 6-5-521(a) (emphasis added).

{B3420169}                                   5

19. Alabama Code § 6-5-521(b), commonly called Alabama's "Innocent Seller" statute, states:

> No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
>
> (1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.
>
> (2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.
>
> (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.
>
> (4) It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.

Ala. Code § 6-5-521(b)(1)-(4).

20. Plaintiffs' claims against Academy are based solely on its role as the seller of the allegedly defective inversion table. Complaint ¶¶ 4, 9, and 12. Likewise, Plaintiffs' claims against KKR are solely the result of it being the "parent company of Academy"

(which is untrue). Complaint ¶ 5. According to the Innocent Seller statute, however, such claims are barred.

21. According to the Complaint, Plaintiff Matthew Vinson purchased the inversion table from Academy in January 2019. Complaint ¶ 12. Neither Academy nor KKR had any role in the design, manufacture, testing, assembly, warnings, or distribution of the inversion table. *See* Exhibit B, Affidavit of Christopher Lee, at ¶ 3; Exhibit C, Affidavit of Angela Higby, at ¶ 3.

22. At no time did Academy or KKR inspect, repair, or perform maintenance on the inversion table (or its foot-locking mechanism) purchased by Matthew Vinson. *See* Ex. B, at ¶ 3; Exhibit C, at ¶¶ 3-4.

23. The allegations in the Complaint, along with the affidavit testimony of Christopher Lee and Angela Higby establish that Academy and KKR did not design, manufacture, or assemble the inversion table; did not exercise substantial control over the design, testing, manufacturing, packaging, or labeling of the inversion table; and did not alter or modify the subject inversion table.

24. Therefore, the only provision in the Innocent Seller statute that could ever apply in this case is Ala. Code § 6-5-521(b)(4). However, Plaintiffs have articulated no "independent acts unrelated to the product design or manufacture" against Academy or KKR. To the contrary, Plaintiffs' claims are all based on the design, research, manufacture,

marketing, supply, promotion, packaging, selling, testing and/or distribution of the inversion table. Complaint ¶¶ 26-89.

25. In *Sewell v. Smith & Wesson Holding Corp.,* 2012 WL 2046830 (N.D. Ala. June 1, 2012), the Court found the Alabama distributor had been fraudulently joined because the Innocent Seller statute prohibited a plaintiff from bringing a product liability claim, including negligence, wantonness, and breach of warranty claims, against the distributor for the sale of an allegedly defective gun that the distributor did not manufacture, design, test, or modify. In reaching its decision, the Court held the negligence and wantonness claims did not remove the distributor from the protections of the Innocent Dealer statute. *Sewell*, at *2–3.

26. Likewise, in *Cooper v. Nissan Motor Co., Ltd.*, No. 2:18-cv-00483-KOB, 2018 WL 3109612 (N.D. Ala. June 25, 2018), the court found that the Alabama based car dealership had been fraudulent joined because the Innocent Seller statute barred the product liability claims against a distributor who was not the manufacturer or assembler of the product. *Id.* at * 3.

27. Here, as in *Cooper* and *Sewell*, Plaintiffs' claims against Academy and KKR all relate to Academy selling a product it had no role in designing or manufacturing. Plaintiffs have failed to articulate any claims against Academy or KKR unrelated to the inversion table's design or manufacture. Therefore, Academy's—and by extension

KKR's—conduct does not fall within an exception to the Innocent Dealer statute, and Plaintiffs cannot recover from Academy or KKR as a matter of law.

28. Accordingly, Plaintiffs have fraudulently joined Academy and KKR, and their citizenship cannot be considered for the purpose of determining diversity and subject matter jurisdiction.

## AMOUNT IN CONTROVERSY REQUIREMENT IS MET

29. Plaintiffs' Complaint does not specify the amount of damages they seek, but the damages sought clearly exceed the $75,000.00 jurisdictional limit. *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 754 (11th Cir. 2010) ("when the Complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional amount") (internal quotations and citations omitted).

30. Defendants meet this burden by showing either that it is facially apparent from the Complaint, or by putting forth "additional evidence demonstrating that removal is proper." *Roe v. Michelin N. Am., Inc.* 613 F. 3d 1058, 1061 (11th Cir. 2010).

31. Here, Plaintiffs allege injuries for a spinal cord injury that allegedly left Thomas Vinson with partial quadriplegia. Complaint ¶ 47. As a result, Plaintiffs are seeking damages for medical expenses (past and future), diminished quality of life, attorneys' fees, other compensatory damages, and punitive damages. *Id.*

32. It is "crystal clear" that "at the moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive damages, or emotional distress, or attorneys' fees, the claim automatically is deemed to exceed $75,000 and becomes removable under 28 U.S.C. § 1332." *Jones v. Hartford Fire Ins. Co.*, 2013 WL 550419, at *1 (N.D. Ala. Feb. 7, 2013) (citing *Smith v. State Farm Fire & Casualty Company*, 868 F.Supp.2d 1333 (N.D. Ala. 2012)); *Tucker v. Northbrook Indem. Co.*, 2013 WL 5961095, at *1 (N.D. Ala. Nov. 7, 2013) ("The 'legal certainty' that there could not be sufficient punitive damages to take the recovery beyond $75,000 is virtually impossible to demonstrate.").

33. "Where there is the reasonable possibility of an award of punitive damages greater than the jurisdictional minimum, as the court may determine from its 'judicial experience and common sense,' removal is proper." *Taylor v. Alabama CVS Pharmacy, L.L.C.*, 2017 WL 3009695, at *2 (N.D. Ala. July 14, 2017) (quoting *Roe*, 613 F.3d at 1065).

34. Because Plaintiffs seek compensatory damages for a serious spinal injury and punitive damages, it is "facially apparent" that the amount in controversy exceeds $75,000.00.

35. Accordingly, the amount in controversy is satisfied. 28 U.S.C. § 1332.

## THE PROCEDURAL REQUIREMENTS ARE SATISFIED

36. The Notice is filed within one year of the commencement of this action, and it is filed within 30 days after service of the Complaint on Extreme Products—the last

served Defendants—on February 7, 2020. Therefore, this notice of removal is timely pursuant to 28 U.S.C. § 1446(b) and Rule 6 of the Federal Rules of Civil Procedure.

37. Extreme Products Groups, LLC consents to the removal of this Action. Exhibit D, Extreme Products' Consent. There is no requirement for Academy, as a fraudulently joined party, to consent to removal. *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 n.5 (11th Cir. 2015).

38. The Circuit Court of Clay County, Alabama, the state court in which this action was filed, is located within the jurisdiction of the United States District Court for the Northern District of Alabama, Eastern Division.

39. A copy of all records and proceedings from the state court record, including a copy of all process, pleadings, and discovery served upon the Defendants are attached as required by 28 U.S.C. § 1446(a). Exhibit A.

40. Written notice of the filing of this Notice of Removal is being served upon Plaintiffs' counsel and a copy is being promptly filed in the Circuit Court of Clay County, Alabama, where the action was pending.

WHEREFORE, PREMISES CONSIDERED, KKR respectfully removes the State Court Action from the Circuit Court of Clay County, Alabama, to this Court under 28 U.S.C. §§ 1332, 1441, and 1446.

Dated: March 9, 2020                    Respectfully submitted,

/s/ Cole R. Gresham
Jay M. Ezelle (ASB-4744-Z72J)
Cole R. Gresham (ASB-8993-L74G)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
*jme@starneslaw.com*
*crg@starneslaw.com*

**Attorneys for KKR & Co. Inc.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 9, 2020, I served a copy of the foregoing via Certified Mail on the following:

Richard A. Wright
Janine McKinnon McAdory
WETTERMARK & KEITH, LLC
3595 Grandview Parkway, Suite 350
Birmingham, Al 35243
Tel: (205) 933-9500
Fax: (205) 309-0500
rwright@wkfirm.com
jmcadory@wkfirm.com

J. Burruss Riis
John E. Rollins
HAND ARENDALL HARRISON SALE LLC
1801 5th Avenue North
Suite 400
Birmingham, AL 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
briis@handfirm.com
jrollins@handfirm.com

Extreme Products Group, LLC
c/o Corporation Services Company
2711 Centerville Road
Wilmington, Delaware 19808

                                        /s/ Cole R. Gresham