IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **THOMAS E. VINSON, et al.,** | ) |
| **Plaintiffs,** | ) |
| v. | ) Case No. 1:20-CV-00321-CLM |
| **EXTREME PRODUCTS GROUP, LLC, et al.,** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

The question presented is whether Plaintiffs Thomas and Matthew Vinson ("Vinsons") fraudulently joined Defendant Academy Ltd ("Academy") in their state court complaint to avoid federal diversity jurisdiction. For the reasons stated below, the answer is no, so the court lacks jurisdiction and must remand the case.

## BACKGROUND

### I. Factual History

This case is about an inversion table. Inversion tables are devices that use gravity to reduce pressure on the user's spine. The user inserts his feet into a locking mechanism at the bottom of the table. After securing his feet, the user pivots the table, putting his body in a vertical, upside-down position.

Matthew Vinson bought one of these inversion tables, the Body Vision IT9825 Premium Inversion Table ("Table") from Academy, a sporting goods store.

Doc. 1-1 at 5. Defendant Extreme Products Group LLC manufactured the table. *Id.*

Matthew's father, Thomas Vinson, tried to use the table. *Id.* While in an inverted position, the foot-locking mechanism allegedly released Thomas. *Id.* He fell on his head and went to the emergency room with "neck pain, weakness and paralysis of the upper and lower extremities." *Id.* Thomas was diagnosed with a spinal cord injury and CT scans revealed a C6 fracture. *Id.* Thomas has not recovered all movement abilities, especially fine motor control and will allegedly require lifelong medical care, services, and equipment because of his injury. *Id.*

## II. Procedural History

The Vinsons sued Defendants in state court. Defendant Kohlberg Kravis Roberts & Company, Inc. ("KKR") removed the case to this federal court (doc. 1), alleging diversity jurisdiction, which requires that (a) the amount in controversy exceeds $75,000 and (b) every plaintiff is of diverse citizenship from every defendant. *See* 28 U.S.C. § 1332. No one disputes that the amount of controversy exceeds $75,000. Diversity is the question.

The court raised the diversity issue sua sponte in a show cause order directed at KKR. Doc. 11. KKR responded by filing a notice of defendants' citizenship that shows that Thomas Vinson and Academy Ltd. are both citizens of New Jersey, which would destroy complete diversity. Doc. 13. But KKR alleges that the Vinsons fraudulently joined KKR and Academy as defendants—which, if true, would make

KKR and Academy's citizenship irrelevant. *Id.* at 2. Only the citizenship of Plaintiffs and Defendant Extreme Products Group, LLC would matter for jurisdictional purposes, so complete diversity would be restored.

KKR contends that "Plaintiffs cannot state of [sic] cause of action against Academy or KKR according to Alabama's Innocent Seller statute." *Id.* So the question is whether the Vinsons' claim against Academy—the party that would destroy diversity—is potentially viable under Alabama's Innocent Seller statute.

### STATEMENT OF LAW

### I. Remand and Fraudulent Joinder

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). For removal to be proper, the federal court must have subject matter jurisdiction over the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams,* 482 U.S. 286, 392 (1987). Any doubts regarding removal should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *City of Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

When determining whether to remand a case, district court must evaluate facts in a light most favorable to plaintiff along with uncertainties of state law. *Crowe v.*

*Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). In the fraudulent joinder context, courts use a procedure like summary judgment. *Id*. To prove fraudulent joinder, a defendant must prove either (1) there is no chance the plaintiff can establish a cause of action against the resident defendant or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The defendant must make this showing by clear and convincing evidence. *Id.*

The burden on the removing party to prove fraudulent joinder is a "heavy one." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* at 1333 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983), superseded by statute, 28 U.S.C. § 1441(a), on other grounds as recognized in *Stillwell*, 663 F.3d at 1333).

## II.  Alabama Innocent Seller Act

Alabama's product liability law includes the Innocent Seller Act (ISA), which states in relevant part:

> (b)  No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a

> product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
>
>> (1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.
>>
>> (2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.
>>
>> (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.
>>
>> (4) It is the intent of this subsection to protect distributors who are merely conduits of a product. *This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.*

Ala. Code § 6-5-521(b). The Vinsons claim that the emphasized language makes their claim against Academy viable. The court analyzes this claim below.

## ANALYSIS

Generally, the court's task is to divine whether an Alabama court might find that the Vinsons' claim(s) against Academy are viable. The Alabama courts have yet to explain whether and how an injured party can state a viable claim against a retail seller under subsection (b)(4), but both the plain language of the ISA and caselaw interpreting it suggest at least a "mere possibility" of success under Alabama law. *Stillwell*, 663 F.3d at 1332. That's enough to require remand. *Id.*

### I.      Plain Language

Again, the fourth and final clause of §6-5-521(b) states that

> It is the intent of this subsection to protect distributors who are merely conduits of a product.  ***This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.***

Ala. Code § 6-5-521(b)(4) (emphasis added). Read plainly, the ISA does not preclude claims of negligence and wantonness against the retail seller of a defective product, if the negligence or wanton act of the retailer is "unrelated to the design or manufacture" of the product. *Id.*

In Count V, the Vinsons assert claims of negligence and wantonness against all Defendants, including Academy. Doc. 1-1, ¶¶ 70-77. In that count, the Vinsons allege nine distinct acts of negligence or wantonness, including:

- "Promoting the [table] without adequately, sufficiently, and/or thoroughly testing it";
- "Failing to adequately and correctly warn Plaintiffs and ordinary customers of the dangers of the [table]"; and,
- "Advertising and/or marketing the use of the [table] despite the fact that Defendants knew or should have known of its defects[.]"

Doc. 1-1, ¶74. As for the alleged failure to warn, the Vinsons state in their brief that "Plaintiffs can show that at the time Plaintiffs purchased the inversion table at issue, Academy knew or should have known of the unreasonably dangerous condition of

the inversion table and the lack of implementation of a safer alternative design. In fact, similar litigation against manufacturers and sellers of inversion tables had been filed in various jurisdictions prior to Matthew purchasing the table." Doc. 16 at 7.

If the Vinsons can prove that Academy knew that the inversion table was dangerous or lacked known safety features, there is at least "a possibility that a state court would find that the complaint states a cause of action" under the ISA, *Stillwell*, 663 F.3d at 1332, because the state court could find that these are "independent acts unrelated to product design or manufacture." Ala. Code § 6-5-521(b)(4).

KKR disagrees; it argues that the Vinsons' claims against Academy are "entirely dependent on the inversion table being defectively designed or manufactured." Doc. 19 at 5. But KKR cites no Alabama state court decision that answers whether a retailer seller's failure to warn of known defects is an "independent act." So even if this federal court agreed that KKR has the better reading of the statute, the Vinsons prevail because there is at least "a possibility that a state court would find that the complaint states a cause of action" under the ISA.[1] *Stillwell*, 663 F.3d at 1332.

## II.     Caselaw interpreting the ISA

---

[1] KKR's argument that the Vinsons' complaint lacks specificity and relies too much on 'group pleading' is best left to the state courts.

The ISA is a young statute (2011), and the case law surrounding it is still underdeveloped. The Alabama Supreme Court has not answered the question directly presented here: Does the ISA shield retail sellers from negligence and wantonness claims based on the failure to warn of known injury risks or missing safety features? The only state court decision involving subsection (b)(4) that appears to have made it to the state supreme court is *Reyes v. Better Living, Inc.*, No. CV-2012-900646.00 (Baldwin Co. Cir. Ct. Ala.). *See* Doc. 19 at 6. But that case turned on a question of retroactivity, *see Reyes v. Better Living, Inc.*, 174 So. 3d 342 (Ala. 2015) (J. Moore, dissenting), and the supreme court decided not to grant cert. So all we have is a one-judge dissent on retroactivity.

This lack of guidance from the state supreme court has caused federal courts in Alabama to err with caution in the fraudulent joinder context. Of the nine relevant cases this court has seen, only one has found that plaintiff fraudulently joined a defendant: *Cooper v. Nissan Motor Co. LTD.*, No. 18-cv-000483, 2018 WL 3109612, at *3 (N.D. Ala. June 25, 2018). So, naturally, KKR relies heavily on *Cooper*, a case in which a car dealer was found not liable for a defective vehicle because the district court determined that the plaintiff did not allege any "independent acts unrelated to product design or manufacture." *Id.* But, as stated, the Vinsons pleaded that Academy committed independent acts of negligence and

wantonness. Whether those factual allegations are sufficiently detailed, or state a claim under the ISA, are questions best left to the state courts.

The other eight district court opinions discussed how broadly a court could interpret "independent acts," *see, e.g.*, *Waits v. Kubota Tractor Corp.*, No. 7:19-CV-01080-LSC, 2019 WL 4917903, at *4 (N.D. Ala. Oct. 4, 2019), especially when the plaintiff alleges that the product was unreasonably dangerous. *See Barnes v. Gen. Motors, LLC*, No. 2:14-CV-00719-AKK, 2014 WL 2999188, at *5 (N.D. Ala. July 1, 2014). In those cases, the courts decided that there is too much ambiguity in the ISA to make a claim impossible—meaning that remand was required.

\* \* \*

This is a murky state law issue. KKR may be right that that allowing the Vinsons to prosecute a claim against Academy "requires the Court to ignore the intent of the Legislatures the Alabama Legislature to protect the mere sellers of the product." Doc. 19 at 5. But it is not a federal court's job to divine the intent of a state legislature. Nor can this federal court divine the Alabama Supreme Court's interpretation of the ISA before that court weighs in on the subject.

Federalism dictates that this court leave the interpretation of Alabama law to Alabama courts. Until Alabama courts weigh in on the ISA, the best this court can say is that it is possible that a state could read subsection (b)(4) plainly and conclude

that the Vinsons had pleaded a viable claim against Academy. Under Eleventh Circuit law, that's sufficient to require remand.

## Conclusion

For the reasons stated above, the court lacks subject matter jurisdiction over this case. So this case is due to be **REMANDED** to the Circuit Court of Clay County, Alabama. Defendants' motion to dismiss (doc. 7) is due to be **DISMISSED AS MOOT.**

**DONE** on November 9, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE